UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP., <br><br> **Plaintiff,** <br><br> v. <br><br> NUVASIVE, INC., JOE VAN COTT, ERIC TRAMA, THOMAS CASAL, PETER NUNEZ, MICHAEL SCHEINER, CLINTON HANDELSON, MICHAEL BRENNAN <br><br> **Defendants.** | Civ. No. 17-7906 (KM) (SCM) <br><br> **OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Howmedica Osteonics Corp., acting through its Stryker Spine division ("Stryker Spine"), brings suit against Joe Van Cott, Eric Trama, Thomas Casal, Peter Nunez, Michael Scheiner, and Clinton Handelson (collectively, "Individual Defendants"), as well as NuVasive, Inc. ("NuVasive"). (DE 34).

Before the Court is the motion (DE 35) of the defendants under Fed. R. Civ. P. 12(b)(6) to dismiss several counts of the Amended Complaint for failure to state a claim upon which relief may be granted. For the reasons set forth in this opinion, the defendants' motion is denied.

1

## I. Summary[1]

### a. Background

I write for the parties and therefore state only the facts relevant to this motion to dismiss.

#### i. Stryker Spine's business

Plaintiff Howmedica Osteonics Corp., acting through its Stryker Spine division, is a wholly owned subsidiary of Stryker Corporation. (AC ¶ 11). (Unless otherwise specified, "Stryker Spine" as used herein refers to Howmedica.) Stryker Spine invents, designs, manufactures, and sells spine-related instruments and implants. (AC ¶ 24).

Stryker Spine directly employs sales representatives, who are assigned territories. (AC ¶ 28). Sales representatives are primarily responsible for building and developing relationships with surgeons in their territories. (AC ¶ 31). These sales representatives are organized into individual branches, which are overseen by sales managers. (AC ¶ 28). Sales managers are responsible for supervising and driving sales for their particular branch, managing the budget of their branch, and overseeing inventory. (AC ¶ 30). Sales managers are also expected to build and maintain customer relationships. (Id.).

Aside from its own sales force, Stryker Spine sells its products through distributors, who are not Stryker employees. (AC ¶ 29). Distributors are given exclusive rights to sell Stryker Spine products in a given territory. (AC ¶ 29). Distributors hire their own sales representatives and sales managers. (Id.).

Stryker Spine gives its sales representatives, and the sales representatives of its distributors, access to confidential and proprietary information. (AC ¶ 37). Sales managers, too, necessarily have access to Stryker Spine's confidential and proprietary information. That confidential information includes Stryker Spine's product designs and plans for the future (AC ¶ 38), as

---

[1] On a motion to dismiss the allegations of the complaint are taken as true, and inferences are drawn in favor of the nonmoving party. *See* Section II.A, *infra*. Citations herein to the Amended Complaint (DE 34) are abbreviated as "AC __".

well as information about sales representatives' performance, business, and compensation. (AC ¶ 40).

### ii. Individual Defendants' employment with Fusion

Until December 29, 2016, Fusions Solutions, Inc. ( "Fusion") was the exclusive distributor of Stryker Spine products in the New York City and Long Island region. (AC ¶ 12). Each of the Individual Defendants, who at the relevant time were Fusion sales representatives, entered into an "Employment, Confidentiality, and Non-Compete Agreement" with Fusion (the "Fusion Agreement"). (AC ¶ 62, 64–69); (DE 34-2, 34-4 to 34-9).[2]

Stryker Spine alleges that, because Fusion was an exclusive distributor of Stryker Spine products, the Confidential Information[3] and customer relationships protected by the Fusion Agreements included Stryker Spine's own confidential information and customer relationships. (AC ¶ 72).

Effective December 29, 2016, Fusion Solutions and Stryker Spine entered into a Termination and Transition Agreement. Pursuant to that agreement, Fusion Solutions ceased operating as the exclusive distributor of

---

[2] I properly consider the eight executed copies of the Fusion Agreement appended to the plaintiff's amended complaint, (DE 34-2, 34-4 to 34-9), because the plaintiff refers to the Fusion Agreements in the Amended Complaint and the agreements are integral to the plaintiff's claims. (*See, e.g.,* AC ¶¶ 62, 64 – 69); *In re Asbestos Products Liability Litigation* (No. VI), 822 F.3d 125, 134 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

For the same reasons, I properly consider Stryker Corporation Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement for U.S. Employees, a copy of which is appended to the complaint, and which is integral to the allegations. (DE 34-10; *see* AC ¶¶ 78, 80–85.)

[3] "Confidential Information" is a defined term at Section 5 of the Fusion Agreement. (AC ¶ 70); (DE 34-2, 34-4 to 34-9 at § 5).

Stryker Spine in the NYC and Long Island regions and assigned its rights in each of the Fusion Agreements to Stryker Spine. (AC ¶ 74).[4]

### iii. Individual Defendants' employment with Stryker Spine

Effective January 1, 2017, Stryker Spine hired the Individual Defendants, who had been employed by Fusion, as Stryker Spine's direct employees. (AC ¶ 75). Individual Defendant Van Cott and non-party Jonathan Isopo were both hired as sales managers. (AC ¶ 45, 50). Individual Defendants Casal and Trama were hired as sales representatives, reporting to Van Cott, (AC ¶ 46–47); Individual Defendants Nunez, Handelson, Scheiner, and Brennan were hired as sales representatives, reporting to Isopo, (AC ¶ 52, 53, 54, 55).

When hired by Stryker Spine, each of the Individual Defendants entered into a "Stryker Corporation Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement for U.S. Employees" (the "Stryker Agreements"). (AC ¶¶ 78, 80–85).[5]

> Section 8.11 of the Stryker Agreement, titled "Entire Agreement" states:
>
> This document, including its three attachments . . . contains the entire agreement of the parties related to the matters addressed in this Agreement . . . This Agreement supersedes any and all prior agreements between the parties with respect to the matters addressed in this Agreement."

(DE 34-10 at § 8.11). Similarly, Section 8.12 of the Stryker Agreement, titled "Prior Agreements" states: "Except as may be stated herein, I agree and acknowledge that this Agreement supersedes prior agreements between me and Stryker with respect to the subject matter addressed in this Agreement." (DE 34-10 at § 8.12).

---

[4] Section 9(d) of the Fusion Agreements provides: "[t]his Agreement shall be binding upon and inure to the benefit of the parties hereto, and their respective successors and assigns. Employee may not assign this Agreement." (AC ¶ 73; DE 34-2, 34-4 to 34-9 at § 9(d)).

[5] Copies of each of the Stryker Agreements are at DE 34-10, DE 34-12 to 34-17. Because they are identical, I will use DE 34-10 as an example when quoting the Stryker Agreements.

4

Each of the Individual Defendants received an incentive sign-on bonus during their first pay period in 2017. (AC ¶ 93) They executed an offer letter agreement obligating them to refund their sign-on bonus if they terminated employment within twelve months. (AC ¶ 95).

### iv. Individual Defendant's employment with NuVasive

The spinal implant industry is highly competitive. (AC ¶ 26). Defendant NuVasive is one of Stryker Spine's direct and largest competitors. (Id.).

In Mid-August 2017, NuVasive's Vice President of Sales, Jim Hens, and a NuVasive sales representative met with Van Cott and Isopo to discuss bringing Stryker Spine's New York City and Long Island sales force to NuVasive. (AC ¶ 99–100). In conjunction with this meeting, NuVasive requested and received copies of the Stryker Agreements. (AC ¶ 101).

Shortly afterward, NuVasive CEO Greg Lucier and Hens met with Van Cott and Isopo to discuss the two sales managers moving to NuVasive. (AC ¶ 102). At that meeting, Lucier told Van Cott and Isopo that "whatever business you can bring over, we'll let you do whatever you want." (AC ¶ 102).

Within a week, NuVasive began hosting clandestine meetings with Van Cott, Isopo, and eventually the Stryker Spine sales representatives to bring the sales team to NuVasive. (AC ¶ 103).

On August 28, NuVasive contemplated ways to circumvent the sales managers' and sales representatives' Stryker Agreements. (AC ¶ 104–106).

On August 29, 2017, Van Cott and Isopo signed letters of intent to move to NuVasive. (AC ¶¶ 107, 108). At Hens's direction (id.), Van Cott and Isopo spoke with the Stryker Spine sales representatives with whom they had the best relationships, and directed them to contact Hens for an in-person meeting. (AC ¶ 109). When that in-person meeting occurred, NuVasive gave the sales representatives a demonstration of NuVasive's products and an offer to join NuVasive. (AC ¶ 109).

During the week of August 28, 2017, the Stryker Spine sales force began meeting with top Stryker Spine customers to see if the customers would be

willing to follow them to NuVasive, or, in the alternative, to work with a different sales representative at NuVasive until the non-solicitation agreements expired. (AC ¶ 110).

At close of business on September 15, 2017, at the direction of NuVasive's regional sales director, Derek Haughney, the Individual Defendants provided notice of their termination. (AC ¶ 111). On or near that date, several surgeries that were originally scheduled for the implantation of Stryker Spine products were switched to Nuvasive. (AC ¶ 112–115).

### b. Procedural history

On April 6, 2018, Stryker Spine filed the Amended Complaint alleging ten counts. (DE 34). On April 16, 2018, defendants brought this partial motion to dismiss. (DE 35). On April 21, 2018, Stryker Spine filed an opposition to that partial motion to dismiss. (DE 37). On June 11, 2018, defendants filed a reply memorandum in further support of their motion to partially dismiss. (DE 40).

On June 20, 2018, Stryker Spine requested permission to file a sur-reply. (DE 42 and 42-1). On June 25, 2018, I granted leave to file the sur-reply (DE 44), and, on the same date, granted defendants' request to formally respond to that sur-reply. (DE 45). On June 29, 2018, defendants filed their sur-sur-reply. (DE 47). The matter is fully briefed and ripe for decision.

## II. Discussion

### a. Legal standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### b. Analysis

I address the defendants' arguments in the following order.

First, I deny defendants' arguments that, under the Economic Loss doctrine, the Court should dismiss the following four claims against the Individual Defendants:

1. Breach of fiduciary duty of loyalty (count III);
2. Tortious interference with prospective economic advantage: Stryker Spine's workforce (count VI);
3. Tortious interference with prospective economic advantage: Stryker Spine's customers (count VII); and
4. Unfair competition (count VIII).

(DE 35, 2).

Second, I deny the defendants' related argument that the Court should dismiss

1. the claim against NuVasive for aiding and abetting the Individual Defendants in breaching their duty of loyalty (Count IX) and

7

2. the claim against all defendants for civil conspiracy (Count X). (DE 35, 2–3).

Third, as to NuVasive, I deny the defendants' argument that the Court should dismiss the following three claims because they are duplicative of the tortious interference with contract claim:

1. Corporate raiding (Count IV (B))[6]
2. Tortious interference with prospective economic advantage: Stryker Spine's workforce (count VI);
3. Tortious interference with prospective economic advantage: Stryker Spine's customers (count VII).

In sum, for the reasons discussed below, I will deny the defendants' motion to dismiss in its entirety.

### c. Superseding agreements

Defendants move to dismiss Stryker Spine's claim against the Individual Defendants for breach of the Fusion Agreements (Count II). (DE 35-1, 6–7). The Fusion Agreements, they say, were entirely superseded by the later Stryker Agreements. "Under New Jersey law, when a subsequent contract exists which (1) on its face purports to contain the entire agreement and (2) clearly supersedes any prior agreement, then 'in the absence of ambiguity, the rights, duties and obligations of the parties are to be determined' from the subsequent contract." *Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.*, No. CIV.A.04-1866 JBS, 2005 WL 3588482, at *7 (D.N.J. Dec. 29, 2005).

The Individual Defendants, defendants argue, are no longer bound to the Fusion Agreements, because the Fusion Agreements were superseded by the subsequent Stryker Agreements. (DE 35-1, 6–7). Defendants point to two paragraphs, Paragraph 8.11 and Paragraph 8.12, of the Stryker Agreement

---

[6] The Amended Complaint designates two separate claims against NuVasive as Count IV. I will refer to the claim of tortious interference with contract as "Count IV(A)", and the claim of corporate raiding as "Count IV (B)". (DE 34, 35–36).

that *may* supersede the Fusion Agreements, but I cannot so hold as a matter of law on a motion to dismiss.

Consider Paragraph 8.11 of the Stryker Agreement. It is not clear that the "matters addressed in this agreement" are the same as the "matters" covered by the Fusion Agreement. ("Matters" is not a defined term.).[7] ON that score, defendants cite the Amended Complaint, which alleges that "the confidential information and customer and employee relationships designed to be protected under the [Fusion Agreements] are, in fact, Stryker's confidential information, Stryker's relationships and the stability of Stryker's sales force." (DE 40, 4–5 (citing AC ¶ 137). I am not persuaded. Even if a distributor-employee agreement binds the employee to protect the information and business of the distributor's supplier, it is not clear that the distributor-employee agreement and the supplier-employer agreement cover the identical "matter." If that were intended, it could have been stated more clearly, perhaps even clearly enough to warrant a motion to dismiss. *Cf Avatar Bus*, 2005 WL 3588482, at *7 (holding that it was clear that a second brokerage agreement superseded an expired brokerage agreement because the language of the second brokerage agreement stated: "this Agreement supersedes all of the terms and conditions of the Expired Brokerage Agreement").

I also consider Paragraph 8.12, which discusses "the subject matter addressed in this Agreement." The same problem arises.

In sum, without discovery, it is not clear that the Stryker Agreement wholly supersedes the Fusion Agreement. Defendants' motion to dismiss Count II is therefore denied.

---

7     Nor is it clear as a matter of law that the parties intended the term "all prior agreements between the parties" to include agreements that had been explicitly assigned to Stryker Spine. If the parties intended to void such agreements, there perhaps would have been little point in assigning them. That, however, is an issue requiring factual development.

### d. Tort claims against Individual Defendants

Defendants argue that the Court should dismiss the tort claims against the Individual Defendants (Counts III, VI, VII, and VIII) because, under the economic loss doctrine, Stryker Spine's contract claims against the Individual Defendants bar recovery for torts predicated on the same underlying facts. (*See* DE 35-1, 7–10, 13–14, 16–17). At the motion to dismiss stage, however, I will generally respect a party's entitlement to plead claims in the alternative. *See* Fed. R. Civ. P. 8(d). *See Sahoury v. Meredith Corp.*, No. CIV.A. 11-5180 KSH, 2012 WL 3185964, at *8 (D.N.J. Aug. 2, 2012) ("The economic loss doctrine, if applicable here, would bar recovery where tort and fraud claims arise from the same facts as a breach of contract claim. It does not bar a plaintiff from pleading such claims.").

Defendants cite decisions in prior cases brought by Stryker Spine. (DE 35-1, 8–9, 13–14). And it is true that *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. CIV.A. 11-1857 DMC, 2012 WL 5554543 (D.N.J. Nov. 14, 2012), rejected Stryker's tort claims against former sales representatives and managers under the Economic Loss Rule, because they were "not separate and distinct from [the facts] it allege[d] in support of its breach of contract claims." *Zimmer*, 2012 WL 5554543, at *3. What defendants miss is that *Zimmer* was a decision on summary judgment, not on a motion to dismiss. *Id.* I cannot now decide whether the Economic Loss Rule applies to this undeveloped set of facts.

Indeed, prudentially speaking, I should not. If one branch of the alternative were truly defective as a matter of law, and if it appeared that pruning that dead branch would streamline the case, I might view the matter differently. Here, however, the complaint presents an ordinary either/or choice of legal theories. To find Stryker Spine's tort claims duplicative or superfluous would be premature. Indeed, it might set a trap for plaintiffs: By now seeking dismissal of one alternative as "superfluous," defendants are not exactly committing themselves to refrain from later attacking the other.

A plaintiff who advances two valid theories may ordinarily have them both tested by discovery. To be sure, the Economic Loss Rule may dictate that the plaintiff cannot *prevail* under both theories; but "sufficient unto the day." That determination can await summary judgment. In the interest of fairness, and in light of the standard on a motion to dismiss, I will neither decide whether the Economic Loss Rule applies to this undeveloped set of facts nor prematurely lop off Stryker Spine's tort claims.

### e. Additional claims related to the Economic Loss argument

On the assumption that their Economic Loss argument would knock out the primary tort claims, defendants have also moved for dismissal of two other counts. They are (1) Stryker Spine's claim against NuVasive for aiding and abetting the Individual Defendants in breaching their fiduciary duties (Count IX) (DE 35-1, 17–18), and (2) Stryker Spine's claim against all defendants for civil conspiracy (Count X). (DE 35-1, 18–19). The defendants' argument is simple: Counts IX and X depend on the underlying tort claims in Counts III, VI, VII, and VIII. If those underlying tort claims are dismissed, then Counts IX and X should be dismissed, too. (DE 35-1, 17–19).

The premise fails. As explained above, I will not now dismiss Stryker Spine's tort claims against the Individual Defendants based on the Economic Loss Rule. Thus the motion to dismiss Counts IX and X will be denied as well.

### f. Corporate raiding

Defendants argue that the Court should dismiss Stryker Spine's claim for corporate raiding against NuVasive (count IV (B)) because it is duplicative of Stryker Spine's claims for tortious interference with a contract (Count IV (B)) and tortious interference with Stryker Spine's workforce (Count VI). (DE 35-1, 11–13). Again, defendants rely on *Zimmer*, which, at the summary judgment stage, dismissed a similar corporate raiding claim. (Id.); *see Zimmer*, 2012 WL 5554543, at *13. To persuade the court to apply *Zimmer* to this motion to dismiss, defendants make the muddied assertion that "the time at (and the Rule through) which the request for dismissal is brought" is essentially

11

irrelevant. (DE 35-1, 12). For the reasons expressed above, I disagree, and I will not now dismiss Count IV(B) as duplicative.

### g. Tortious interference with a workforce and tortious interference with customers

Defendants argue that the Court should dismiss Stryker Spine's claims against NuVasive for tortious interference with a workforce (Count VI) and tortious interference with customers (Count VII) because both claims are duplicative of Stryker Spine's claim against NuVasive for tortious interference with contracts (Count III). (DE 35-1, 14– 6). Here, at least, there is some suggestive precedent for addressing the issue at the motion-to-dismiss stage. *See Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc.*, 49 F. Supp. 2d 728, 737 (D.N.J. 1999).

I respectfully disagree, however, and decline to do so under the circumstances of this case. The overlap is not as clear as it was in *Rodin*, where the only relationship at issue consisted of a mortgage and promissory note as between two business entities. Here, it does not appear that dismissal would change the course of discovery or streamline the case in any significant manner. For now, I will permit this alternative pleading to stand, and will address such arguments with the benefit of a factual record, at summary judgment.

## III. Conclusion

For the reasons set forth above, I will DENY the defendants' partial motion to dismiss. An appropriate order follows.

Dated: November 15, 2018

Kevin McNulty
United States District Judge